LAW OFFICES
BROENING OBERG WOODS & WILSON
PROFESSIONAL CORPORATION
2800 N. CENTRAL, SUITE 1600
PHOENIX, ARIZONA 85004
TELEPHONE: (602) 271-7700
FACSIMILE:  (602) 258-7785
Robert T. Sullivan/Bar No. 022719
E-mail: rts@bowwlaw.com
Jathan P. McLaughlin/Bar No. 028065
E-mail: jpm@bowwlaw.com

*Attorneys for Plaintiff H.K.B., Inc. dba Southwest Industrial Rigging*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

### DIVISION ONE

| | |
|---|---|
| H.K.B., Inc., an Arizona Corporation dba Southwest Industrial Rigging,<br><br>Plaintiff,<br><br>v.<br><br>Zurich American Insurance Company,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff, H.K.B., Inc. dba Southwest Industrial Rigging ("SWIR"), by and through its attorneys undersigned, for its Complaint against Zurich American Insurance Company ("Zurich") alleges as follows:

1. This action is brought pursuant to 28 U.S.C. § 2201 <u>et seq.</u>, the Federal Declaratory Judgment Act.

2. This Court has jurisdiction over the parties and subject matter of this litigation pursuant to 28 U.S.C. § 1332, because there is diversity of citizenship and more than $75,000 is in controversy.

3. Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 139(a) in that Plaintiff is domiciled and/or resides within the District of Arizona and the relevant agreements were consummated in Arizona and subject to its laws. Additionally, venue is proper under Rule 1.1, Rules of Practice of the United States District Court for the District of Arizona, as the claim presented to this Court with respect to the insurance policy, arose in this District.

**PARTIES**

4. Plaintiff SWIR is a corporation domiciled in the State of Arizona with its principal place of business in Arizona and is authorized to do business and is doing business in the State of Arizona.

5. Defendant, Zurich is incorporated in the State of New York with its principal place of business in the State of Illinois. It is licensed to sell policies in Arizona and regularly conducts business in Arizona.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

6. On June 9, 2016 Todd O'Laughlin fell while he was working as a set man on a bridge project in Maricopa County, Arizona.

7. At the time of the fall, Encon Arizona, LLC, dba TPAC employed Mr. O'Laughlin.

8. TPAC had retained SWIR as a subcontractor on the project under the control and supervision of TPAC.

9. SWIR provided cranes, personnel and equipment used to lift girders into place on the project and the scope of the work performed by SWIR was under the exclusive control and direction of TPAC.

10. Todd and Erika O'Laughlin filed a lawsuit in Maricopa County Superior Court, Case Number CV2018-050478 ("the O'Laughlin Lawsuit") alleging, among other things, that SWIR is liable for injuries allegedly sustained by Mr. O'Laughlin because

1  SWIR's employees allegedly turned a girder loose before it could be adequately braced.
2  (See O'Laughlin's lawsuit at paragraph 48).

3      11.    At the time, SWIR and its employees were working under the exclusive
4  control of TPAC and, as such, released the girder in question only when instructed to do
5  so by TPAC.

6      12.    On three separate occasions, SWIR has tendered the defense and
7  indemnification of the O'Laughlin Lawsuit to Zurich.

8      13.    Initially, Zurich failed to provide even a basic response to the tender and,
9  therefore, SWIR retendered the matter on October 18, 2018.

10      14.    SWIR advised Zurich that it stood ready to surrender the control of the
11  defense to Zurich and explained how the tender was proper under the relevant insurance
12  policy.

13      15.    TPAC was insured by Zurich at the time of the claims giving rise to the
14  O'Laughlin Lawsuit.

15      16.    Pursuant to the terms and the agreements, SWIR was an additional insured
16  on the relevant insurance policy.

17      17.    In addition, SWIR is entitled to indemnification from TPAC and,
18  accordingly, Zurich under the terms of the parties' agreement concerning SWIR's work at
19  the project. Specifically, TPAC ("Lessee") agreed to indemnify SWIR ("Lessor") as
20  follows:

> 1. INDEMNIFICATION -- <u>Lessee agrees to indemnify and save Lessor, it employees and agents harmless from all claims for death or injury to persons, including Lessor's employees, of all loss, damage or injury to property, including the equipment, arising in any manner out of Lessee's operation.</u> Lessee's duty to indemnify thereunder shall include all costs or expenses arising out of all claims specified herein, including all court and/or arbitration costs, filing fees, attorney's fees and

costs of settlement. <u>Lessee shall be required to indemnify Lessor for Lessor's own negligence or fault, whether the negligence or fault of the Lessor be direct, indirect or derivative in nature. However, the Lessee shall not be required to indemnify Lessor for any claim caused by or resulting from the sole negligence or willful misconduct of the Lessor, the Lessor's agents, servants, or independent contractors who are directly responsible to the Lessor</u>. The indemnification above shall not be limited in any way by any limitation on the amount or type of damage, compensation or benefits payable by or for the Lessee under workers' compensation acts, disability benefits acts, or other employee benefits acts. The Lessee's obligations hereunder shall further not be limited by the amount of its liability insurance and the purchase of such insurance for Lessor shall not operate to waive any of the above obligations. This provision is separate and distinct from any other provision or paragraph in this contract, including any provision or paragraph concerning partial indemnification or procurement of insurance. If any word, phrase, or sentence of this paragraph or any other paragraph is declared invalid, then all other words, phrases, or sentences of all paragraphs of this contract shall stand.  If this paragraph or any other paragraph is declared invalid, then all other paragraphs of this contract shall stand. Furthermore, as part of Lessee's additional obligations hereunder, Lessee shall bear the cost of any investigation or adjustment (including but not limited to, attorney's fees and costs, private investigator/adjuster fees and costs, expert fees and costs, costs of storage and down time for inability to use the equipment, and costs of testing of property, equipment, or other items) initiated by the Lessor, Lessor's insurance carriers or Lessor's third party adjusters into any accident of any kind, when such accident, or occurrence happens, involving directly or indirectly the leased equipment, whether or not such accident involves personal injury, death or damage to the leased equipment or other property or all of these.

(See contract, attached hereto, at ¶ 1) (emphasis added).

18. Under the terms of the indemnification agreement, TPAC is obligated to indemnify SWIR for any damages assessed against it in the O'Laughlin Lawsuit, even if

- 4 -

those damages are determined to have been caused by SWIR's own negligence and Zurich is required to defend and indemnify such claims.

19. This indemnification extends to the attorneys' fees and costs incurred by SWIR in defending the O'Laughlin Lawsuit.

20. In addition to TPAC's duty to indemnify SWIR, triggering coverage under the Zurich Policy, TPAC also agreed to name SWIR as an additional insured on its insurance policies covering work being performed at the project where Mr. O'Laughlin fell. This insurance was required to be primary non-contributory as noted in the following contractual language:

> 2. INSURANCE –The Lessee agrees to purchase the following insurance coverages prior to the equipment's arrival on the job site. The Lessee shall procure the following coverages for Lessor: a.) worker's compensation and employer's liability insurance, with limits of at least the statutory minimum or $1,000,000, whichever is greater; b) primary non-contributory commercial general liability insurance on an occurrence basis, including bodily injury and property damage coverage with minimum limits of $1,000,000 per occurrence and $2,000,000, in the aggregate; c) excess/umbrella non- contributory insurance in the amount of $5,000,000 and Lessee's primary and excess/umbrella policies must be endorsed so that they are primary and non-contributory to all of Lessor's insurance policies; d) inland marine/all risk physical damage insurance, on a primary non-contributory basis, to cover the full insurable value of the equipment, including any boom or jib, for its loss or damage from any and all causes, including, but not limited to, overloading, misuse, fire, theft, flood, explosion, overturn, accident, and acts of god occurring during the rental term, for the greater of $1,000,000 or the valuation of the equipment listed on the front page of this contract, and the parties agree that this is the actual value of the equipment for the purposes of fixing the equipment's insurable value; e) all policies are to be written by insurance companies acceptable to the Lessor; f) the Lessor and all affiliated partnerships, joint ventures, corporations and anyone else who Lessor is required to name

- 5 -

as an additional insured, are to be included as additional insureds on all liability insurance policies, including excess/umbrella policies (ISO Form CG 20 10 11 85 must be used), Lessee shall name Lessor as a Loss Payee on all insurance policies, and Lessee shall provide all insurance certificates to Lessor when requested; g) all policies shall be endorsed to require the insurer to give thirty (30) days advance notice to all insureds prior to cancellation; h) all of Lessors', and anyone Lessor is required to insure, policies are excess over all of Lessee's policies.  In the event of loss, proceeds of property damage insurance on the equipment shall be made payable to Lessor. Lessee's agreements to indemnify and hold Lessor harmless from any liability, damage and loss are in addition to, and not an alternative to, these insurance provisions and the purchase of any of the above coverages shall not operate to waive any of the above indemnity provisions. To the extent that the Lessee may perform under this lease without obtaining the above coverages, such an occurrence shall not operate, in any way, as a waiver of the Lessor's right to maintain any breach of contract action against the Lessee. Lessee hereby agrees to waive any and all rights of subrogation and any and all lien rights (including those arising from worker's compensation/employer's liability policies or other employee benefit programs, commercial general liability policies, or similar policies) which may accrue to it or its insurers. This shall include, but not be limited to, rights of subrogation and lien rights. The Lessee understands that this waiver shall bind its insurers of all levels, and agrees to put these insurers on notice of this waiver and to have any necessary endorsements added to the insurance policies applicable to this lease. PAYMENT - All Charges are due on the date of invoice of not paid within thirty days, Customer shall pay interest at the rate of 1 ½ % monthly on the unpaid balance.

(See contract at ¶ 2).

21. Zurich issued Policy No. GLA 4857417-05 to ENCON United Company ("Zurich Policy") and provides coverage on an occurrence basis from January 1, 2016 to January 1, 2017.

- 6 -

1  The Zurich Policy includes Endorsement CG 20 34 04 13 which provides:

**COMMERCIAL GENERAL LIABILITY**
**CG 20 34 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT – AUTOMATIC STATUS WHEN REQUIRED IN LEASE AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) from whom you lease equipment when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy. Such person(s) or organization(s) is an insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However, the insurance afforded to such additional insured:

1. Only applies to the extent permitted by law; and
2. Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when their contract or agreement with you for such leased equipment ends.

B. With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

C. With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement you have entered into with the additional insured; or
2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

22. The endorsement is contained in two different locations in the Zurich Policy (pp. 57 and 74). By its terms the endorsement adds "any person[] or organization[] from whom you lease equipment when you and such person[] or organization[] agreed in writing in a contract or agreement that such person[] or organization[] be added as an additional insured on your policy."

23. As previously noted, the lease agreement between SWIR and TPAC <u>expressly requires</u> SWIR to be added as an additional insured on TPAC's policy.

24. Because the terms of the lease agreement between SWIR and TPAC require TPAC to add SWIR as an additional insured, the CG 20 34 04 13 Endorsement to TPAC's

policy with Zurich automatically added SWIR as an additional insured subject the terms of the endorsement.

25. The endorsement adds SWIR as an additional insured with respect to bodily injury caused "in whole or in part by [TPAC's] maintenance, operation or use of equipment leased to you by [SWIR]."

26. Based on the allegations in the Complaint, it is clear that the injuries to Mr. O'Laughlin were caused "in whole or in part" as a result of the "operation or use" of the crane leased by SWIR to TPAC.

27. It is well settled that a liability insurer's duty to defend is separate from, and broader than, the duty to indemnify. . . . A liability insurer's duty to defend generally arises '[i]f the complaint in the action ... upon its face alleges facts which come within the coverage of the liability policy."

28. SWIR provided Zurich with a complete analysis of the law interpreting the relevant policy provisions, Arizona law and the facts of the case. Despite the clear and unequivocal tender and applicability of the policy to the claim against SWIR, Zurich denied and continues to deny SWIR's tender.

**COUNT I**
**DECLARATORY RELIEF REGARDING THE DUTY TO DEFEND AND INDEMNIFY**

29. SWIR incorporates by reference paragraphs 1 through 28 of this Complaint as if fully set forth herein.

30. SWIR has appropriately and properly tendered the matter to Zurich for the defense and indemnification.

31. The Zurich Policy provides a specific duty to provide a defense and indemnification to SWIR because the allegations in the O'Laughlin Complaint triggered coverage.

32. A judicialable controversy exists as to whether Zurich has a duty to defend SWIR in the O'Laughlin Lawsuit and, therefore, the Court has jurisdiction under 28 U.S.C. A.R.S. § 2201 et seq. to adjudicate and declare the rights and obligations under the Policy.

33. A declaration is necessary and appropriate at this time given Zurich's refusal to defend and indemnify SWIR under the Zurich Policy and because of the ongoing financial harm suffered by SWIR in the defense of the litigation.

34. Because the allegations arise out of contract, SWIR is entitled to its costs and attorneys' fees pursuant to A.R.S. §§ 12-341 and 12-341.01.

**COUNT II**
**BREACH OF CONTRACT**

35. SWIR incorporates by reference paragraphs 1 through 34 of this Complaint as if fully set forth herein.

36. SWIR is an additional insured on under the Zurich Policy.

37. SWIR has properly tendered the defense and indemnification of the O'Laughlin Lawsuit to Zurich.

38. Zurich has breached its contractual obligations to SWIR by denying the tender for a defense in the indemnification of SWIR for the claims in the O'Laughlin Lawsuit.

39. SWIR has been damaged as a result of the improper denial including expenditures for attorneys' fees, costs, administrative resources and related activity. These damages exceed $75,000.

40. SWIR is entitled to its costs and fees pursuant to A.R.S. A.R.S. §§ 12-341 and 12-341.01.

# COUNT III
# BAD FAITH

41. SWIR incorporates by reference paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42. SWIR maintains that Zurich has wrongfully and, in violation of Arizona law, denied the tender of this defense and indemnification of the O'Laughlin matter.

43. There is no reasonable basis for the denial.

44. The denial is particularly egregious given the undisputed facts, clear language in the Policy and efforts to explain SWIR's coverage position to Zurich.

45. Additionally, Zurich improperly delayed its responses to SWIR's request for tender.

46. As a result of the foregoing, SWIR has suffered damages including attorneys' fees, costs, the time value of money, a potential increase in insurance premiums and administrative/business expenses in attempting to secure a proper defense and indemnification from Zurich.

47. SWIR is also entitled to its costs and attorneys' fee pursuant to Arizona law and A.R.S. §§ 12-341 and 12-341.01.

**WHEREFORE**, SWIR respectfully requests the following relieve:

1. A declaration that SWIR is entitled to a defense and indemnification from Zurich with respect to the claims alleged in the O'Laughlin Lawsuit;
2. That SWIR be awarded all damages, including costs, fees and administrative expenses caused by the relevant breach of contract and bad faith;
3. That SWIR be awarded to punitive damages and any other damages cause by the breach and duty of good faith and fair dealing;
4. That SWIR be awarded all its costs and attorneys' fees pursuant to contract and A.R.S. § 12-341 and 12-341.01; and

5. For such other further relief as the Court deems just.

RESPECTFULLY SUBMITTED this 15th day of August, 2019.

BROENING OBERG WOODS & WILSON, P.C.

By: /s/ Robert T. Sullivan
Robert T. Sullivan
Jathan P. McLaughlin
2800 N. Central Ave., Ste. 1600
Phoenix, Arizona  85004
*Attorneys for Plaintiff H.K.B., Inc. dba Southwest Industrial Rigging*

CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.

By: Lisa Black